FOURNET, Justice.
 

 Plaintiff, Joseph John Davilla, instituted this suit against the Boswell sisters — Martha, Connie, and Vet — on January 7, 1935, to recover the sum of $7,300 for damages arising out of an alleged breach of a verbal contract entered into between them on or about April 23, 1926.
 

 The basis of plaintiff’s action is the failure of defendants to carry out their part of a verbal agreement under the terms of which the plaintiff allegedly agreed to and did make, at his own expense, a moving picture of the three sisters while in the act of singing, and the defendants agreed to appear with the film in theatres in New Orleans, Louisiana, and other states, for the purpose of singing from behind the screen on the stage while the film was being run in such a way as to give the public the impression it was a talking picture. The plaintiff alleged 'that under this agreement the defendants actually appeared with the film and gave twenty-three exhibitions, the last one being on June 17, 1926, at which time, because of Martha’s expected confinement in August, the venture was temporarily abandoned, with the understanding it would be resumed as soon after the birth of her child as possible; “that approximately four months later, the defendants * * *, without the knowledge or consent of * * * (plaintiff) appeared in the theatres of New York City, performing their usual act,” (parentheses ours.) never returning to fulfill their contract with him, despite repeated demands on his part; and that without the appearance of the defendants the film was worthless and resulted in damage to him, because he was deprived of the profits he would have made from these appearances, which he fixed at $20 an exhibition for a period of one year, talking pictures having become a reality about that time.
 

 The defendants denied the contract, and, answering further, detailed the facts which gave rise to this controversy.
 

 There was judgment in the lower court dismissing plaintiff’s suit and the case is now before us on an appeal taken by the plaintiff.
 

 The trial judge assigned as his reasons for judgment that “Mr. Davilla failed to show the existence of any contract between himself and the defendants. On the contrary, the Boswell Sisters very definitely proved * * * that at no time had they obligated themselves to Mr. Davilla in any way whatever.”
 

 Under the express provisions of the Revised Civil Code the plaintiff was re
 
 *491
 
 quired to prove his alleged verbal contract, which involved an amount in excess of $500, “at least by one credible witness, and other corroborative circumstances.” Article 2277. He has not only failed to do this, but we think, as did the trial judge, that the evidence is overwhelmingly in favor of the defendants’ version of the matter.
 

 The plaintiff testified that at the time he entered into the verbal contract, for the breach of which he instituted this suit, no one was present but himself and Martha, who was the “mouthpiece of the trio”; that defendants agreed to enter into this joint venture with him, he to furnish the film, they to accompany it with song whenever and wherever it was shown, and to split the profits to be derived therefrom in the proportion of 25% to each of the four. In this he is contradicted by the two defendants who testified, Martha and Connie. Both stated they were present when the plaintiff discussed the matter of having the film-made of them and there was no understanding whatever that' they would be required to appear at any of the theatres where the film would be run or that they would participate in any of the profits to be derived therefrom. On the contrary, they testified it was expressly understood that their making of the film was prompted solely by motives of friendship and in order to assist the plaintiff in
 
 further
 
 advertising a song written by him, previously sung by them at his request over radio station WSMB during one of their weekly broadcasts, and, some time thereafter, published in sheet music form carrying their picture, with their permission, on the cover, with the inscription, caused by plaintiff to be placed thereon, “Successfully introduced by Boswell Sisters, ‘Martha, Connie & Vet’ Famous Radio and Victor Recording Artists,” — all of which was prior to the timewhen the filming of the defendants was discussed.
 

 That the filming of defendants at plaintiff’s expense formed no part of a contract,, as testified to by plaintiff, is conclusively-shown by a document dated April 23, 1926,, addressed to the film production department of the Harcol Motion Picture Industries, Inc. (the company employed by plaintiff to make the film), by Martha, Connie,, and their mother, signing on behalf of Vet,., who was then only 15 years old, wherein is-found the following stipulation:
 
 ‘‘It is definitely understood and agreed that you are-not to pay us for this (making of the film)' in view of the fact that we will get so-much advertising out of it, and we agree-that Mr. Davilla (plaintiff) may use it indefinitely in motion picture Theatres without, in any way, paying us a remuneration
 
 (Italics and parentheses ours.)
 

 Martha Boswell testified that it was only after the film had been completed and the plaintiff found he was unable to have it run. in the theatres that he called on her at her husband’s place of business, where she was-employed, and sought, in her husband’s presence, to have'the defendants consent to* enter into a contract to appear at certain local theatres and perform their usual act (which was somewhat in the nature of a. vaudeville act and consisted of the three sisters playing instruments and singing in harmony a number of songs worked up by
 
 *493
 
 them, one being a song composed by Martha herself) in connection with the running of plaintiff’s film. Defendants first rejected this proposal but later consented thereto and, on May 11, 1926, entered into a written •contract with the Sobel-Richards-Shear Enterprises to give their usual performance on twenty-three different occasions at the theatres designated on the dates indicated beside each, for which service the corporation agreed to pay the defendants $20 a day. In this she is corroborated not only by the written document, but also by .the testimony of her husband.
 

 The alleged verbal contract is not supported by any evidence whatsoever except the testimony of the plaintiff, which, as just demonstrated, was completely refuted. Plaintiff did, however, offer the testimony of some five witnesses in an effort to impeach the testimony of the defendants Martha and Connie, who, during the course of their testimony, stated they did not appear behind the screen when they performed at the various theatres, as testified to • by plaintiff, but, on the contrary, appeared on the stage after the film had been run and performed their usual act. It is unnecessary for us to analyze the testimony of these witnesses here, or to narrate it in detail. Suffice it to say that while the testimony of all five is to the effect the Boswell sisters performed behind the screen during the running of the film, in corroboration of plaintiff’s testimony in this respect, it does not in any way corroborate the allegations of plaintiff’s petition and his testimony on the witness stand that a verbal contract was entered into between him and defendants. It might be that such evidence would be relevant for the purpose of impeaching defendants’ testimony, but even for that purpose it has very little probative value since these witnesses, in addition to corroborating the defendants in some pertinent respects, contradicted the plaintiff in other instances. Besides the testimony of most of these witnesses is not very impressive.
 

 For the reasons assigned, the judgment of the lower court is affirmed, at appellant’s cost.
 

 O’NIELL, C. J., and LAND, J., absent.